# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KIM RASHEEDA SAVOY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **07-1738 ESH** |
| | ) | |
| **VMT LONG TERM CARE** | ) | |
| **MANAGEMENT, INC.,** | ) | |
| **aka and dba WASHINGTON** | ) | |
| **CENTER FOR AGING** | ) | |
| **SERVICES** | ) | |
| | ) | |
| **AND EMMA HARRELL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION OF DEFENDANT VMT LONG TERM CARE
## MANAGEMENT, INC. TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(6) and the Rules of this Court, the Defendant

VMT Long Term Care Management, Inc. ("VMT") moves to dismiss[1] the Complaint in

the above-captioned matter for the following reasons:

(1)    Plaintiff's claim under the District of Columbia Human Rights Act against

the identical parties, making the same allegations, was dismissed by the Superior

Court for the District of Columbia because it was untimely. Case No. 2006 CA 005354

B. Plaintiff is precluded on res judicata grounds from bringing the same claim in this

Court. Moreover, it is untimely by nearly two years.

---

[1]  To the extent the Court considers the attached Affidavit or other matters outside of the Amended
Complaint, this motion may properly be considered a Rule 56 Motion for Summary Judgment.

(2)    Plaintiff's claim under Title VII of the Civil Rights Act of 1964 should be dismissed because it is untimely.

(3)    Even assuming the Title VII claim is not dismissed as untimely, as a matter of law plaintiff does not allege facts sufficient to establish a violation of Title VII.

Accordingly, and for the reasons more fully set forth in the accompanying Memorandum of Law, Defendant VMT moves to dismiss the Complaint.

**EPSTEIN BECKER & GREEN, P.C.**

By:    /s/  Kathleen M. Williams_____
Kathleen M. Williams
Of Counsel
Bar No. 334888
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Washington, D.C.

(202) 861-0900

Counsel for Defendant VMT
Long Term Care Management, Inc.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KIM RASHEEDA SAVOY,                )
                                   )
      **Plaintiff,**              )
                                   )
   v.                            )    **07-1738 ESH**
                                   )
VMT LONG TERM CARE                 )
     MANAGEMENT, INC.,         )
     aka and dba WASHINGTON    )
     CENTER FOR AGING          )
     SERVICES                  )
AND EMMA HARRELL,                  )
                                   )
    **Defendants.**             )

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF
## DEFENDANT VMT LONG TERM CARE MANAGEMENT, INC.

Pursuant to Fed.R.Civ.P. 12(b)(6) and the Rules of this Court, the Defendant VMT Long Term Care Management, Inc. ("VMT") moves to dismiss the Complaint in the above-captioned matter for the following reasons:

(1) Plaintiff's claim under the District of Columbia Human Rights Act against the same parties, making the same allegations, was dismissed by the Superior Court in June 2007. It is therefore barred on res judicata grounds. It also is untimely;

(2) Plaintiff's Title VII claim is untimely inasmuch as it was filed more than one hundred five (105) days after the Notice of Right to Sue appears to have been issued in this case.[1] Inasmuch as Title VII requires that a lawsuit be filed within ninety (90) days of a party's receipt of the Notice of Right to Sue, it is untimely.

---

[1]   Defendant VMT did not receive a copy of the Notice of Right to Sue from the EEOC, contrary to standard EEOC practice.

(3)  Plaintiff in any event does not allege facts sufficient to establish a violation of Title VII.  Her allegations do not establish a viable claim of religious discrimination.

### Legal Standard for Dismissal

A complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 n5.  (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*,  355 U.S. 41, 45-46 (1957)).   At this stage, all reasonable factual inferences must be construed in plaintiff's favor, and all allegations in the complaint are presumed true. *Maljack Prods., Inc., v. Motion Picture Ass'n of Am., Inc.,* 52 F.3d 373, 375 (D.C. Cir. 1995). "However, the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI  Comm'cns. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). To survive a motion to dismiss,  the factual allegations of the plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl.,* 127 S. Ct. at 1965.

Defendant VMT submits that the Complaint, in conjunction with and as limited by the scope of plaintiff's EEOC charge, must be dismissed pursuant to these standards.

### A.    Factual Background

### 1.    The Superior Court Action, Dismissed in June 2007.

Plaintiff filed a complaint in the Superior Court for the District of Columbia in July 2006 (Case No. 2006 CA 005354 B), Exhibit A hereto, which she amended in

December 2006, Exhibit B hereto.   Defendant VMT's Motion to Dismiss the Amended

Complaint, with a supporting Affidavit, is attached hereto as Exhibit C.

On March 30, 2007, in a bench ruling, Judge Bartnoff dismissed the case against

Defendant Emma Harrell for failure of service. (Exhibit D hereto is a copy of the

Superior Court docket in that case).  In June 2007, Judge Bartnoff dismissed the case in

its entirety.  Plaintiff's claims against VMT under the D.C. Human Rights Act were

dismissed as untimely.  To the extent the Complaint could be construed to allege

slander, it was also dismissed as untimely.  Finally, Judge Bartnoff dismissed the Title

VII claim based on Plaintiff's failure to exhaust administrative remedies under Title VII,

inasmuch as she had not obtained a Notice of Right to Sue from the Equal Employment

Opportunity Commission, and thus had failed to exhaust administrative remedies.

### 2. Plaintiff's EEOC Charge.

Plaintiff filed a charge with the EEOC, alleging discrimination on the basis of her

religion, on or about August 15, 2005. See Exhibit E.  The charge names only

defendant VMT (doing business as Washington Center for Aging Services) as a

Respondent.   Defendant Emma Harrell is not named as a Respondent.

The EEOC Charge does not say that Ms. Savoy's religion requires her to wear a

black head covering.  It expressly says:  "I wear a dark head scarf because a lighter

color would show my hair."   Exhibit E.

Finally, the charge alleges in a conclusory fashion that co-workers and

supervisors made unspecified "harassing comments" to her in November or December

2004, and that the Director of Nursing said she "looked like a terrorist and a mass

murderer."

The Notice of Right to Sue plaintiff received from the EEOC (and attached to her Complaint) is dated June 15, 2007. She did not file this lawsuit until September 28, 2007, one hundred five days after the date of the Right to Sue Notice, with no explanation as to the untimely filing.

### 3. Plaintiff's Employment with VMT and her Complaint Allegations.

Plaintiff alleges in her Complaint that during the course of her employment with VMT as a Nursing Assistant in the Washington Center for Aging Services she was slandered by a co-worker and discriminated against on the basis of her religion, Islam. Compl. Introductory Statement, ¶ 1. Plaintiff also admits she was disciplined on a number of occasions for neglecting the patients under her care. *Id.*

Specifically, plaintiff makes the following factual allegations:

- VMT was aware of her religious background when it hired her (*id*);

- She dressed in the traditional Islamic way early in her employment and was accommodated while she wore light colored head coverings (*id.*);

- She took frequent breaks early in her employment to pray at designated prayer times (*id.*);

- After she was assigned floor duty as a nursing assistant, she continued to wear a pink head covering and was permitted to do so (*id.*);

- She thereafter began to wear a black head covering, and was told she could not do so, pursuant to company policy, *id.* at ¶¶ *1 and 2* (which policy governed nurses and nursing assistants);

- She admits she was told the reason for VMT's policy requiring white or light colored clothing for Nursing Assistants was to avoid confusion among the elderly patient

population, many of whom suffered from dementia, and for security purposes (to allow patients, visitors and colleagues to identify easily those who were nursing staff). *Id.*

- Her supervisor complained about her treatment of patients, and particularly questioned why she forced her patients to be in bed by 8 pm, and she was forced to switch bed time to 9 pm. *Id. at ¶ 1.*

- She was criticized for praying during times she claimed to be on breaks. *Id.*

- She was accused by fellow employees of reading the Koran during working hours, and was advised by her supervisor that she must stop doing so. *Id. at ¶ 2.*

- She was reported by a fellow employee to have left early, was reprimanded for leaving her patients unattended, but appealed the reprimand and prevailed. *Id. at ¶ 2.* She does not deny that she left work early. *Id.*

- On another occasion, she was suspended for admittedly leaving early in order to pick up her daughter. *Id. at ¶ 3.*

- She was accused of neglecting her patients and leaving them wet and unattended, and was suspended. *Id. at ¶ 3.*

- She was reprimanded again when she did not call in to report she would not be at work, when in fact she had been involved in a fire at a relative's home, and believed the paramedics had called in for her. *Id. at ¶ 3.*

- She continued to come to work wearing a black head covering even after being advised that VMT could not accommodate her preferred dress due to concerns regarding the elderly patients who tended to be easily confused and for security reasons. *Id. at ¶ 4.*

- One day when she arrived at work wearing a black head covering and long black garb, an employee commented that she looked like "a terrorist" or a "mass murderer." *Id.* When she complained to management, she was advised that the employee would undergo sensitivity training. *Id.* She does not allege that any similar comments were ever made again.

- Her supervisor kept asking her if she was going to comply with the dress code (which she acknowledged required white or light colored clothing), and she replied that she would continue to wear her black head covering. *Id.*

- She was pressed to remove the black head covering, but refused, and was suspended in December 2004,[2] *id.*[3]

The Complaint in this case was filed on or about September 28, 2007, more than three years after plaintiff received notice of VMT's policies and its position on

---

[2] Although the complaint states that the suspension occurred in December 2005, it in fact occurred in December 2004, as acknowledged elsewhere in the Complaint by Plaintiff, and she was discharged in February 2005, as she acknowledges in Paragraph 1 of the Complaint and in her EEOC Charge.

[3] As detailed in the attached Affidavit of Winsome Davidson, Human Resources Manager of VMT (prepared for submission to the Superior Court for the District of Columbia as an Exhibit to VMT's Motion to Dismiss the Amended Complaint filed in that Court, *see Attachment 1 to Exhibit C*), plaintiff was hired in February 2004 and her employment terminated effective February 8, 2005. Documentation maintained by VMT in the ordinary course of business shows plaintiff was provided notice of VMT's dress code, requiring white or light covered attire, at the outset of employment. When Ms. Savoy began to wear a light colored head covering, her request for a religious accommodation was accommodated. When she began to wear a heavy black head covering, VMT advised her that the black head covering was contrary to policy in her position (it permits such head coverings in non-nursing positions), and Ms. Savoy agreed she would purchase a heavy white head covering. She later changed her position in this regard and refused to do so. At that point, in December 2004, she was suspended, pending her purchase of the white head covering. She ultimately continued to refuse to comply with the dress code and with the agreement she previously had made, and was deemed to have resigned effective February 8, 2005.

This Court may appropriately consider matters of which they may take judicial notice, including public documents, such as those submitted to the EEOC and to the Superior Court in Plaintiff's prior action, without converting this motion to a summary judgment motion. *See Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015 (5th Cir. 1996); *EEOC v. St. Francis Xavier Parochial School,* 326 U.S. App.D.C. 67, 117 F.3d 621, 624 (D.C. Cir. 1997). The Court may also appropriately consider the instant motion as one for summary judgment. *See Carter v. Greenspan,* C.A. No. 03-1026 (D.D.C. Feb. 19, 2004). In such case, the standard changes to whether there is a genuine issue of material fact in dispute and whether the moving party is entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56. *Id.*

enforcement of those policies, and two years and ten months after the last date she worked at VMT (December 2004). All of the actions complained of by plaintiff are alleged to have occurred during the course of her employment, and thus necessarily far more than one year prior to the filing of the Complaint in this case.

## ARGUMENT

### A. The Claims Alleging a Violation of the District of Columbia Human Rights Act Should be Dismissed on Res Judicata and Statute of Limitations Grounds

The Complaint filed in this case alleges religious discrimination under the District of Columbia Human Rights Act. The Superior Court dismissed the precise same claim filed in a lawsuit against the same parties on timeliness grounds.

As held by the Superior Court, when it dismissed the plaintiff's prior claim under the Human Rights Act, a complaint under the District of Columbia Human Rights Act must be made within one year of the date the plaintiff receives notice of the event which is claimed to be discriminatory. D.C. Code section 2-1403.16(a) (requiring that a claim for employment discrimination under the DCHRA must be filed within one year after the date of the adverse employment action, or within one year after the time that the plaintiff knew or should have known that the employment action was undertaken for an unlawful purpose); *Brown v. National Academy of Sciences*, 844 A. 2d 1113 (D.C. 2004); *Jones v. Howard University*, 574 A.2d 1343, 1345 (D.C. 1990).

In this case, plaintiff acknowledges that she was on notice of VMT's position with regard to its dress code by October 2004, and she was suspended for refusing to comply with that dress code in December 2004. The last date on which any alleged discriminatory behavior might possibly be alleged to have occurred is February 8, 2005,

the date VMT sent plaintiff a letter advising her that it accepted her resignation. This Complaint, filed in September 2007, is thus time-barred.

Furthermore, res judicata principles or claim preclusion principles bar the relitigation of a cause of action when a prior case involving the same parties or their privies resulted in a final judgment on the merits in a court of competent jurisdiction. *I.A.M. Nat'l Pension Fund v. Indus Gear Mfg. Co.,* 723 F.2d 944, 946-47 (D.C. Cir. 1983); *Parklane Hoisery Co. v. Shore,* 439 U.S. 322, n. 5 (1979). The doctrine bars litigation, not only of matters that were determined in the previous litigation, but also of issues that could have been raised in that action. *Allen v. McCurry,* 449 U.S. 90, 94 (1980); *Appalachian Power Co. v. EPA,* 251 F.3d 1026, 1033 (D.C. Cir. 2001).

As noted above, the Superior Court dismissed the DC Human Rights Act claims as time-barred under the one year statute of limitations limitation. Plaintiff may not resubmit the same claims to this Court. The DC Human Rights Act claims should thus be dismissed on res judicata grounds as well as on timeliness grounds.

## B. The Title VII Complaint is Untimely

Plaintiff appends to her Complaint a copy of the Notice of Right to Sue she received from the EEOC. That Notice is dated June 15, 2007, and it advises plaintiff that she must file her lawsuit within ninety days of receipt of the Notice. This lawsuit was filed on or about September 28, 2007, well more than ninety days after the Notice of Right to Sue was issued (indeed, 105 days following the date of Notice), and well more than ninety days after plaintiff is legally presumed to have received such notice by

mail. [4] Plaintiff does not allege timely filing, and it appears to be untimely, based on valid legal presumptions. On this basis, the Title VII Complaint should be dismissed.

### C. Even if Plaintiff's Title VII Complaint Were Deemed to Have Been Timely Filed, as a Matter of Law, It does not Allege Sufficient Fact to Survive Dismissal

Plaintiff's Title VII and DC HRA claims are premised on three assertions:

- that VMT discriminated against her on the basis of religion when it refused to permit her to wear a black head covering while providing nursing assistant services to elderly dementia patients;

- that VMT discriminated against her with regard to various disciplinary measures which were taken against her based on work performance issues; and

- that VMT should be held liable for religious discrimination, because a co-employee once commented on her appearance, stating that in her black garb plaintiff "looked like a terrorist or mass murderer."

Though plaintiff speculates there is a connection between her wearing a black head covering and the various disciplinary actions, she presents no factual support for that speculation, and indeed, admits to much of the conduct which formed the basis for the disciplinary actions.[5]

Defendant VMT submits that the allegations of the Complaint, taken as a whole, are insufficient to survive dismissal, as detailed below.

### 1. The Standard of Proof Generally in a Title VII Case.

---

[4] It is presumed that the EEOC mailed the right to sue notice on the date of its issuance and the plaintiff received the notice three days later. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n.1 (1984)(applying Fed.R.Civ.P. 6(e) to Title VII cases); *Fox v. Giaccia*, 424 F.Supp.2d 1, 5-6 (D.D.C., 2006).

[5] Even if the Complaint is not viewed to be untimely, the individual complaint against Emma Harrell must be dismissed. Title VII provides for no cause of action against individual employees. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (Title VII does not impose individual liability).

DC:1162972v1

In a Title VII lawsuit, the plaintiff bears the burden of proof. In the absence of direct evidence, which is the case here, a claim of discrimination is analyzed under the now familiar burden-shifting test articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 793 (1973). To establish a *prima facie* case of discrimination, a plaintiff must show that: (a) she is a member of protected class; (b) she suffered an adverse employment action; and (c) the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody,* 199 F.3d 446 (D.C. Cir. 1999). The third element may be satisfied by proving that the plaintiff was treated differently from similarly situated employees who are not part of the protected class, or by showing that the discharge was "not attributable to the two common legitimate reasons for discharge: performance below the employer's legitimate expectations or the elimination of the position altogether." *George v. Leavitt,* 407 F.3d 405, 412 (D.C. Cir. 2005). If the plaintiff is able to establish her *prima facie* case of discrimination, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its actions." *McDonnell Douglas,* 411 U.S. at 802. If the employer is able to satisfy this burden of production, "it [effectively] rebuts the plaintiff's *prima facie* case, and the presumption of discrimination created by the *prima facie* case drops out of the picture." *Fox v. Giaccia,* 424 F.Supp.2d 1 (D.D.C. 2006)*, citing Teneyck v. Omni Shoreham Hotel,* 254 F. Supp 2d 17, 20-21 n.3 (D.D.C. 2003), *aff'd,* 365 F.3d 1139 (D.C. Cir. 2004) and *Dunaway v. Int.'l Bhd. of Teamsters,* 354 U.S. App. D.C. 36, 310 F.3d 758, 762 (D.C. Cir. 2002). The plaintiff must then demonstrate that the employer's stated reason was pretextual and that the true reason for the decision was discriminatory. *McDonnell Douglas,* 411 U.S. at 804; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507-08 (1993).

The related rules governing accommodation based on religion are discussed below.

### 2. Plaintiff Admits that VMT Accommodated Her Request to Wear a Head Covering, Which Plaintiff Said was Required by Her Religion. Plaintiff Has Alleged Pled Facts Sufficient to State a Claim of Religious Discrimination With Regard to Her Wearing a *Black* Head Covering While Providing Nursing Services to Elderly Patients.

Title VII prohibits the discharging or discrimination against an employee because of the employee's religion. 42 U.S.C. sec. 2000e-2(a)(1). "Religion" is defined to include "all aspects of religious observance and practice," as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's religious observance without undue hardship on the conduct of the employer's business. 42 U.S.C. sec. 2000e (j). Generally, to analyze claims of religious accommodation, a two-step analysis is conducted. First, a plaintiff must establish a prima facie case by demonstrating that (a) she had a sincerely held religious belief which conflicted with an employment requirement; (b) she informed her employer of the belief and the conflict; and (c) the employer threatened her or subjected her to discriminatory treatment as a result of her inability to perform her job requirements, refusing to find a reasonable accommodation. *See, e.g., Baker v. The Home Depot,* 445 F.3d 541 (2d Cir. 2006); *Smith v. Pyro Min. Co.,* 827 F.2d 1081, 1085 (6th Cir. 1987) *cert. denied,* 485 U.S. 989 (1988); *Tiano v. Dillard Dep't Stores, Inc.,* 139 F.3d 679, 681 (9th Cir. 1998); *Heller v. EBB Auto. Co.,* 8 F.3d 1433, 1438 (9th Cir. 1993); *Protos v. Volkswagen of America, Inc., 797 F.2d 129, 133 (3d Cir.), cert. denied,* 479 U.S. 972 (1986). *See also, Freedman v. MCI Telecomm Corp.,* 255 F.3d 840 (D.C. Cir. 2001). If the plaintiff establishes her prima facie case, the burden shifts to the employer

to prove one of two things:  (a) that it initiated good faith efforts to accommodate reasonably the employee's religious practices; or (b) that it could not reasonably accommodate the employee without undue hardship.  *Id.*  Undue hardship may involve an employer's reasonable dress code.  *See, e.g., Ali v. Alamo Rent-a-Car,* 2001 WL 218788 (4th Cir. March 6, 2001)(unpublished) (dismissing a claim by a Muslim employee who claimed her employer violated Title VII when it transferred her to a position with limited customer contact after she refused to stop wearing head scarf); *Cloutier v.Costco Wholesale Corp,* 390 F.3d 126 (1st Cir. 2004), *cert. denied,* 545 U.S. 1131 (2005) (holding that an employer was not required to modify its policy prohibiting facial jewelry as a reasonable accommodation for an employee who claimed membership in the "Church of Body Modification" because doing so would adversely impact the employer's public image, and thus constitute an undue burden); *Daniels v. City of Arlington*, 246 F.3d 500 (5th Cir.), *cert. denied,* 534 U.S. 951 (2001) (similar ruling with regard to policy prohibiting wearing of pins on uniforms because such would cause the police department an undue burden by giving the public appearance that the police department endorsed the police officer's religious views).

In her Complaint, Plaintiff complains that VMT discriminated against her on the basis of religion when it refused to accommodate her request to wear a black head covering while treating patients.  She does not claim that her religion requires a black head covering, and indeed, she admits that she wore a light colored head covering for many months while employed by VMT.  She admits that VMT accommodated her when she first began to wear a head covering, as long as the covering was consistent with the dress code (namely, white or light colored).  In her EEOC charge, she asserts that she

later chose to wear a black covering rather than a white covering because it covered her hair better. Nowhere does she claim that her religion required a black head covering or that she told VMT that her request was based on a religious requirement.

As detailed in the Affidavit of Winsome Davidson, attached as an Exhibit to VMT's Motion to Dismiss the Amended Complaint in the Superior Court action, Exhibit C hereto, plaintiff agreed, when first confronted about her change to the black head covering, that she could wear a white or light colored head covering if it were sufficiently thick to cover her black hair, and she agreed to purchase a sufficiently thick covering. Thereafter, she recanted on that commitment.

Under these circumstances, plaintiff may not cloak her personal preference in religion. She did not claim at the time and she does not now claim that her religion requires her to wear black. It is her personal preference, admittedly.

Moreover, even if the black garb were more than a personal preference, case law makes it clear that an employer is not required to accommodate particular uniform requests when public safety or other important interests outweigh an accommodation request. In this case, plaintiff acknowledges being advised that patient confusion and security issues were the basis for the company policy.

Plaintiff acknowledges being advised that patient confusion and security issues formed the basis for VMT's dress code, requiring Nursing Assistants to wear white or light colored clothing. This justification, amounting to patient and nursing home security, is considerably more substantial than the issues of public appearance recognized by many courts. Plaintiff admits to being advised that concern for the well-being of elderly patients and security were the issues of paramount concern to VMT.

An employer may prevail where the employer shows that it actually did offer an effective reasonable accommodation, but plaintiff rejected it. *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60 (1986). In that case the Supreme Court held that a reasonable accommodation of an employee's religion is one that "eliminates the conflict between employment requirements and religious practices." *Id. at 70.*

In this case, plaintiff admits that her religion does not require her to wear a black head covering. She admitted that a heavier white or light colored head covering would be sufficient, as the only objective was to cover her hair. VMT accommodated her fully in that regard. It permitted her to wear the light colored head covering, finding it consistent with company policies, and sufficient to meet VMT business needs relating to patient care and security. Thus, she cannot establish a prima facie case. Nor can she establish that VMT refused a reasonable accommodation. She thus cannot prove either prong of the Title VII test. There is therefore no basis for permitting the claim to go forward.

### 2. By Plaintiff's Own Account, the Criticisms of Her Performance by Management Related to Performance and Patient Neglect. Inasmuch as Plaintiff Admits to Many of the Performance Issues and Offers Only Speculation that She was Treated Differently Because of Her Religion, She Does Not Allege Facts Sufficient to Survive Dismissal.

Plaintiff claims in a conclusory fashion that the many criticisms of her performance were due to her wearing a black head covering, and thus necessarily, religious discrimination.[6] She does not allege any facts whatsoever to show any such

---

[6] Some of the claims made by Plaintiff are beyond the scope of her EEOC charge, and thus not in any event actionable. Plaintiff cannot bring a Title VII lawsuit with respect to issues that were not raised in the underlying EEOC charge. *See Spence v. Straw,* 54 F.3d 196 (3d Cir. 1995). This requirement "provides the charged party with notice of the claim and helps `narrow the issues for prompt adjudication and decision.'" *Christopher v. Billington,* 43 F. Supp.2d 39, 47 (D.D.C. 1999) (quoting *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 472 n. 325 (D.C. Cir. 1976)). Though the courts allow limited leeway in fulfilling this requirement, a claim must be reasonably related to claims raised in the EEOC charge so as

DC:1162972v1

14

causal nexus. She does not allege facts sufficient to establish a *prima facie* case under the *McDonnell Douglas* test outlined above, nor does she present any evidence whatsoever that the reasons for the various disciplinary actions against her were motivated by her religion.

Plaintiff states in her Complaint that VMT was aware of her religious background when it hired her, and that it accommodated her requests to wear a light covered head covering. She also admits in her Complaint that the criticisms of her performance related largely, if not entirely, to patient care issues, including the fact that she took frequent breaks for prayer purposes, that she read the Koran during working hours, and that she forced patients in her care into an extremely early bed time, presumably so that she would be free to pray and read the Koran. She acknowledges she received criticisms that the patients under her care were wet and otherwise uncared for, and does not deny the truth of the criticisms. She was criticized for clocking out early on at least two occasions that she admits. She admits she was disciplined for failing to call in after a fire and advise her supervisor that she would be absent. Though she asserts that the emergency medical technicians at the fire should have called in for her, she admits she did not call in herself to advise her supervisors she would be out, and does not show evidence that her employer somehow should have known about the fire. Though she speculates that all of the performance criticisms were due to her religion, she alleges no facts to support such speculation, and indeed admits to much of the

---

to put the employer on notice of the claim and provide an opportunity to respond. See, e.g., *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976). In this case, many of the complaint allegations were not made in the underlying EEOC charge, and they do not appear to be related to allegations that were so made. For example, in her complaint, Plaintiff raises an issue with regard to insurance coverage; this issue was not brought up in the EEOC charge, and indeed, a claim with regard to it would likely be covered by ERISA in any event.

activity complained about.  The only complaints that remotely could be considered to relate to religion involved her reading the Koran during working hours and taking excessive prayer breaks.  Reprimands with regard to these issues of course relate to her working hours and commitment to work during those hours, not to her particular religion.  These issues, like all of the issues she points to, relate to patient care and adequate work performance, not to her religion.

Under these circumstances, where there is no factual support to show the requisite nexus to her religion, there is no basis for allowing the claim to proceed.  *See, e.g., Baquir v. Principi,*  434 F.3d 733 (4th Cir.), *cert. denied,*  127 S.Ct. 659 (2006) (alleged rude treatment of Muslim physician from a superior and a Hindu colleague insufficient to show hostile work environment but rather related to "a healthy concern for the safety of patients.")

### 3. Plaintiff Has Not Alleged Facts Sufficient to Show Hostile Environment.

Finally, plaintiff does not allege facts from which one might possibly conclude that VMT permitted employees to harass her.  Indeed, her complaint alleges precisely to the contrary.  She alleges that on one occasion as she was approaching security in full black garb, a co-employee stated that she "looked like a terrorist or mass murderer."  By her account, she complained to VMT, VMT handled the situation adequately, and the problem never recurred.  In this circumstance, she cannot prove actionable harassment.  *See Freedman v. MCI Telecomm Corp.,* 255 F.3d 840 (D.C. Cir. 2001) (one stray comment is insufficient to establish hostile environment), *citing Faragher v. Boca Raton,* 524 U.S. 775 (1998); *Park v. Howard University,* 71 F.3d 904 (D.C. Cir., 1995).

Case law makes it clear that "Title VII is not a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998); *Carter v. Greenspan,* C.A. No. 03-1026 (D.D.C. Feb. 19, 2004) (Huvelle, J.). "It does not serve as a remedy for all instances of verbal or physical harassment, but only those creating a hostile work environment." *Id.* A workplace is not considered "hostile" unless the conduct is so severe or pervasive as to "permeate the workplace with discriminatory intimidation, ridicule or insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Id., citing Williams v. Verizon Washington, DC, Inc.,* 266 F.Supp.2d 107, 124 (D.D.C. 2003) and *Barbour v. Browner,* 337 U.S. App.D.C. 50, 181 F.3d 1342, 1347 (D.C. Cir. 1999); *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 603 (2d Cir. 2006). It is "axiomatic that in order to establish a hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred *because of"* religion, or other protected characteristic. *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002); *Rivera v. Puerto Rico Aqueduct & Sewers Auth.,* 331 F.3d 183 (1st Cir. 2003).

Case law makes it equally clear that an employer is not liable for harassing actions by co-employees if the employer takes prompt and effective remedial action. An employer can only be held liable for such conduct if it knows or should have known of the alleged harassment and failed to take prompt and appropriate corrective action. *See Oncale; Curry v. District of Columbia,* 338 U.S. App.D.C. 439, 195 F.3d 654, 660 (D.C. Cir., 1999); *Coles v. Kelly Servs., Inc.,* 287 F.Supp. 2d 25, 31-32 (D.D.C., 2003).

In this case, plaintiff points to one comment that was made, based on her appearance (and not her religion). She claims she complained about it, and was

advised immediately that the employer would take prompt action. The conduct did not recur. Thus, even if the conduct could reasonably be described as religious harassment, the employer protected her adequately, and thus bears no liability. An employer could not reasonably be expected to do more for her protection, even assuming the comment had been based on religion.

## CONCLUSION

For the foregoing reasons, VMT submits that all claims made by plaintiff in her Complaint are either (a) time-barred; (b) barred on res judicata grounds, or both. Further, to the extent it is not dismissed based on these grounds, the Complaint should be dismissed because, as a matter of law, it does not allege facts to sufficient to establish a violation of law, even presuming their truth.

**EPSTEIN BECKER & GREEN, P.C.**


By:    _/s/ Kathleen M. Williams_____
       Kathleen M. Williams
       Of Counsel
       Bar No. 334888
       EPSTEIN BECKER & GREEN, P.C.
       1227 25th Street, N.W.
       Washington, D.C.

       (202) 861-0900

       Counsel for Defendant VMT
       Long Term Care Management, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Motion to Dismiss the

Amended Complaint  and Memorandum in Support to be served on plaintiff,

        Kim Rasheeda Savoy
        1340 Nichols St. NW
        Washington, DC 20011

as well as on counsel for Defendant Emma Harrell,

        Dawn R. Jackson, Esq.
        Baylor & Jackson, PLLC
        1025 Connecticut Ave.
        Washington, DC 20036

        Stan Brown, Esq.
        9500 Arena Drive, #104
        Largo, MD 20774

by first class mail, postage prepaid, this 22nd day of October 2007.

                    _____/s/ Kathleen M. Williams____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KIM RASHEEDA SAVOY,    )
       )
    Plaintiff,    )
       )
    v.    )    07-1738 ESH
       )
VMT LONG TERM CARE    )
    MANAGEMENT CO., INC.,    )
    aka and dba WASHINGTON    )
    CENTER FOR AGING    )
    SERVICES    )
       )
AND EMMA HARRELL,    )
       )
    Defendants.    )

## ORDER

Having considered the Motion of Defendant VMT Long Term Management, Inc.

to Dismiss or for Summary Judgment, pursuant to Rule 12(b)(6) and Rule 56 of the

Rules of this Court, Plaintiff's response thereto and the record in this case, it is

HEREBY ORDERED

That the Complaint be and hereby is DISMISSED.

_____
United States District Judge

**COPIES TO:**

**Counsel for Emma Harrell:**          **Plaintiff:**
Dawn R. Jackson, Esq.                  Kim Rasheda Savoy
Baylor & Jackson, PLLC                 1340 Nichols St., NW
1025 Connecticut Ave.                  Washington, DC 20011
Washington, DC 20036

Stan Brown, Esq.
9500 Arena Drive, #104
Largo, MD 20774

**Counsel for VMT Long Term Care Management Co., Inc.:**
Kathleen M. Williams, Esq.
Of Counsel
Epstein Becker & Green, P.C.
1227 25th Street, NW
Suite 700
Washington, DC 20037

EXHIBIT A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

RECEIVED
Civil Clerk's Office
JUL 1 3 2006
Superior Court of the
District of Columbia
Washington, D.C.

Kim Rushedg Scvvil, *Plaintiff*
1340 Nicols St NW
(ash DC 2001)
Washington Center for Aging Services
2601 18th St NE
Wash DC 20018 *Defendants*
Servel Antonette Barksdale
3426 Park Pl NW     **COMPLAINT**
Wash DC 20010

CIVIL ACTION NO. _____

0005354-06

MS Emma Herrell
2601 18th NE
Wash DC 20018

1.  Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.

I'm suing this company for violating my state and federal
religious right. I was constantly in a hostile work environment
verbally attacked and slandered.

Wherefore, **Plaintiff** demands judgment against Defendant in the sum of $ 500 000 00
with interest and costs.

**DISTRICT OF COLUMBIA, SS**

Phone: _____

_____, being first duly sworn on oath deposes and says that the
foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all
set-off and just grounds of defense.

(Plaintiff)                                                      Agent)

Subscribed and sworn to before me this _____ day of _____ JUL 1 3 2006 __ 20 ___.

(Notary Public/Deputy Clerk)

EXHIBIT B

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

Kim Rasheda Savoy

*Plaintiff*

FILED
CIVIL ACTIONS BRANCH

DEC 1 8 2006

Superior Court
of the District of
COLUMBIA

vs.                                              CIVIL ACTION No. 2006 CA 005354 B

VMT Long Term Care Management Inc. doing buisness as
(AKA) Washington Center for Aging Services Dce Ms. Emma Harrell
2601 18th St NE
Wash DC 20018

*Defendants*

Amended **COMPLAINT**

1.  **Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**

See attachment

**Wherefore, Plaintiff demands judgment against Defendant in the sum of $ 500,000.00**
**with interest and costs.**

202-636-8625
**Phone:**

**DISTRICT OF COLUMBIA, SS**

_____, being first duly sworn on oath deposes and says that the
foregoing is a just and true statement of the amount owing by defendant to the paintiff, exclusive of all
set-off and just grounds of defense.

Kim Rasheda
(Plaintiff)                                                                      Agent)

**Subscribed and sworn to before me this** _____ **day of** _____ DEC 1 8 2006 ___ 20 ___.

Case: 2006 CA 005354 B

1975054 VANCES 12/22/2006 9:56:53 AM

AMENDED COMPLAINT

INTRODUCTORY STATEMENT

1. This lawsuit is civil, state, and federal action being brought against VMT Long Term Care Managment, Inc. Also known and doing business as Washington Center for Aging Services and several employess's. And a separate filing on Ms. Emma Harrell as an employee of said company. I was hired February of 2005 and suspended without pay December 2005 and consequently fired February 2006 year to date of employment for religious prosecution. Throughout these months I was singled out and arbitrarily picked on constantly. When I began orientation I was able to stop for break and pray at the designated time for prayer. I was accommodated with this right by Ms. Melva Taylor. When I was assigned a floor where my tour of duty would begin. This is where it all began, the floor was 1 Blue and the charge nurse was Tina and the RCC was Gwen. In the begging I wore a dark pink (hijab) head scarf, a month later I wore the traditional black scarf. This seem to have offended a few people and I would come to work 20 to 30 minutes before my tour of duty. Tina the charge nurse would never be satisfied with any work well performed by me. The scheduled bedtime for all residence was 8:00pm and had been for some time on the floor 1 Blue. And my residence were in prompt and well taken care of. For about 3 weeks Tina was displeased at a job well done asking why am I getting them to bed, and no one else has their residence to bed. I replied because they are lazy and don't want to perform their duties. She had a talk with the RCC Gwen and Human resources and the hour was change to 9:00pm. I still was ahead of everyone in regard to taking care of residence bed time and still harassed. I then had to report Tina to Ms. Melva Taylor for allowing a CNA Matthew to give insulin shoots to a resident and he was unlicensed to do so. No action was taken I this matter. As I entered into June at the facility I then began to wear niqab, and jibab upon entering the building with required uniform under it 20 to 30 min early as I did often. That's when even more verbal attacks and harassment began. There was problems with me praying on my two 15 minute breaks and my 30 minute. When most of the higher staff supervisors and employees would take over 8-10 cigarette breaks. Tina would complain about the black garments and head scarf I'd have on. I was told by Ms. DeLace Burch that I would have to remove the scarf or get a letter from my religious leader. I did accommodate them with the letter from my Imam and it still did not please them. I was told black was not a color by Ms DeLace burch in the Human Resources department. She said I was to remove it because it confused the alzheimers residence on the floor. Nun's and people from different churches would come to read the Bible to residence by none of them were attacked and harassed or even asked to remove their head attire. I was asked by Ms. Melva Taylor after being reported by Tina not to read my Qu'ran on the floor and was referred to as that stuff. Meaning Arabic Qu'ran. Then Ms. Sheila Nathan joined in and was told I was reading Qu'ran while working. And also was told I was clocking out before it was time for me to leave by Tina. I was fired by Ms. Johnson until their Human

Resource Manager Ms Burch returned from being sick.. I met with Ms Burch and I asked her to pull my time card. She had Richard her assistant to do so and I was cleared of the false accusations. So I was fired on hear say before that facts were even investigated. And had to be payed the next pay period for the mishap. With no apologies from anyone that had this happen to me. I was again fired because I had to leave 30mintue early to pick my daughter up. This was already told to the night supervisors Ms. Sheila Nathan and Tina. Before leaving I had a co-worker check all of my patients to be sure I would not be accused of any neglect on patients. I know just how much they were trying to get ride of me..The next evening on my tour of duty I was fired again this time 7-8 days for neglect. I was told that all residences were wet and not taken care of properly. When I brought my witness to Human Resources I was re-instated once again. And for the 3rd time I was in a fire at my mother-in-laws house and was being treated by paramedics call my job an hour before work and told them I would not be in. The next day I was fired again 5-6 days brought letter in from Red Cross whom was on the scene of the tragic house fire and rehired again. During the last firing I had payed for my health insurance $380.00 that was deducted from my pay every 2 weeks. I was making arrangement to have my daughter and I get physical and was told that on one occasion of being fired my insurance was dropped. And I was still having these funds being deducted from my pay check. I brought this to my jobs attention and until this day have not been reimbursed. I was even hurt on the job and VMT withheld information for weeks that would allow me to be paid for my injuries. They would constantly tell me Ms. Burch, Tina Ms Melva Taylor Ms Sheila Nathan that I could not wear the black head scarf. I continued to come into to work as I described prepared for work, this time as I passed the guards desk to clock in. Serveral employees were standing around either waiting to leave or to clock in. As I passed Ms Emma Harrell she said blatantly aloud she's a mass murderer and terrorist. Causing everyone to burst into laughter, I kindly walk over to her admonished her and reported her to Ms Melva Taylor. When I arrived at Ms Taylors office Ms Emma Harrell was already there and when they saw me started to laugh again. I explained in detail what had happened to Ms Melva Taylor and she said she'd take care of it. Before I left out the door Ms Emma Harrell looked at me and said, that I had the nerve to walk aroung like that, meaning in my Islamic attire in this day and time. I they reported her to Human Resources Ms DeLace Burch and I was told she would receive sympathy training. C.A.I.R. wrote them a letter explaining the action of the employees and that the company is liable to keep this type of behavior under control. And that we wanted to know we her training would occur, but to no avail. Upon entering the building for 2 weeks Ms Melva Taylor would come to me and say are you going to remove your scarf or change the color and say you just came here to be sent home. I would say I here in what is required in the hand book white pants, shoes and socks and ant color top I desire. And my documentation for head scarf is on file. I was asked to remove or leave for over 2 weeks. Each and everyday I walked in clocked in and walked to my floor Tina would call HR and Ms Melva Taylor would walk on the floor and ask me to remove scarf or leave the building and I would leave. And then in December was ask to leave without pay until further notice.......February 2006 I was given my final check and fired for religious reason. Company and employees should be held accountable jointly and severally accountable for their malicious acts.

AMENDED COMPLAINT

VMT Long Term Care Managment, Inc also known and doing business as Washington Center for Aging Services.

CTC
Emma Harrell
DeLace Burch
Melva Taylor
Sheila Nathan
Gwen Carruel
Tina
Ms. Johnson

1.) Employment discrimination based on religion.
2.) Repeat and re-allege count #1 Repeatedly put in a hostile work environment, verbally attacked and slandered because of religion.
3.) Repeat and re-allege count # 1&2 Company is liable vicariously for it's employee conduct in the course of their employment. And company did not take necessary measures to correct the actions of employees. Nor protect me from verbal attacks and slandered that occurred on a daily basis because of religion.
4.) Repeat and re-allege count 1,2,&3 Ms. Emma Harrell slandered me in front of a multitude of employee defaming my character with no established evidences. And I want the company and employees held jointly severally accountable fo their and Ms Emma Harrell categorical malicious acts because of religion.
5.) Repeat and re-allege count 1,2,3&4 That the company was negligent in supervising their employees. It was the duty of the company to protect and correct the actions of employees and themselves and they failed to do so. Therefor I was injured because of the neglectful supervision of the company resulting in my termination. I want the company and employees held jointly and severally accountable for my injuries.

District courts; Jurisdiction

1-20501 Intent of Council (1973 Ed., & 6-2201; Dec. 13, 1977,D.C. Law 2-38, title I, & 101, 24 DCR 6038.) Based on religion

1-2511 Equal opportunities (1973 Ed., & 6-221; Dec. 13, 1977, D.C. Law 2-38, title II, & 201,

24 DCR 6038.) Based on religion

1-2512 Unlawful discriminatory practices in employment ( 1973 Ed., & 6-221; Dec. 13, 1977, D.C. Law 2-38, title II, 211, 24 DCR 6038.) Based on religion

2000e-1 Public Health & Welfare ( 42 & 2000e-1) Based on religion

2000e-2 Unlawful employment practices
A 1,2,b,c,1,2,3 d, Based on religion.

CA Form 1

# Superior Court of the District of Columbia

### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Kim Rasheely Save

*Plaintiff*

vs.

Civil Action No. 2006 CA 005334CA

VMT Long Term CARe Management Inc & Ms Emma Harrell
aKA and doing business As
Washington Center for Aging Services

*Defendant*

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below.  If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Muhammad Ibn Bashir Esq
Name of Plaintiff's Attorney

P. O. Box 2598
Address
Elizabeth NJ 07201

908-906-2056
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date    DEC 18 2006

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456(Ma) 03

EXHIBIT C

# IN THE SUPERIOR COURT
# OF THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **KIM RASHEDA SAVOY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No.  2006 CA 005354 B** |
| | ) | **Calendar No. 7** |
| **VMT LONG TERM CARE** | ) | **Judge Bartnoff** |
| **MANAGEMENT CO., INC.,** | ) | **Next Event:  Status Conference** |
| | ) | **June 8,  2007** |
| **Defendant.** | ) | |

## MOTION TO DISMISS  AMENDED COMPLAINT

Pursuant to Rules 12(b)(6) and 56 of the Rules of this Court, the Defendant VMT Long Term Care Management Co., Inc. ("VMT")[1] moves to dismiss[2] the Amended Complaint in the above-captioned matter for the following reasons:

(1) to the extent the Amended Complaint alleges slander and/or religious discrimination in violation of the District of Columbia Human Rights Act, the claims are barred by applicable one year statutes of limitation;

(2) to the extent the Amended Complaint is construed to allege religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq., plaintiff has failed to alleged that she exhausted administrative remedies and obtained a Notice of Right to Sue.

---

[1]  The case against Emma Harrell has been dismissed for failure of service, pursuant to this Court's Order of March 30, 2007.
[2]  To the extent the Court considers the attached Affidavit or other matters outside of the Amended Complaint, this motion may properly be considered a Rule 56 Motion for Summary Judgment.

Accordingly, and for the reasons more fully set forth in the accompanying

Memorandum of Law, Defendant VMT moves to dismiss the Amended Complaint in its

entirety.

**EPSTEIN BECKER & GREEN, P.C.**

By: _Kathleen M. Williams_

Kathleen M. Williams
Of Counsel
Bar No. 334888
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Washington, D.C.

(202) 861-0900

Counsel for Defendant

DC:956404v1

2

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Motion to Dismiss the

Amended Complaint  and Memorandum in Support to be served on counsel for plaintiff,

      Muhammad Bashir
      P.O. Box 2598
      Elizabeth, New Jersey 07201

**as well as on plaintiff,**

      Kim Savoy
      1816 Irving St., N.W.
      Unit 204
      Washington, DC 20018

by first class mail, postage prepaid, this ___ day of April 2007.

# IN THE SUPERIOR COURT
# OF THE DISTRICT OF COLUMBIA

KIM RASHEDA SAVOY,       )
                                  )
       Plaintiff,         )
    v.                         )
                                  )  C.A. No.  2006 CA 005354 B
VMT LONG TERM CARE     )
    MANAGEMENT CO., INC.,    )
                                  )
                                  )
       Defendant.       )

## AFFIDAVIT OF WINSOME DAVIDSON

The undersigned, having personal knowledge of the facts herein, being competent to testify, and under penalty of perjury, states as follows:

1.  I am employed by VMT Long Term Care Management, Inc. ("VMT"), as Human Resource Manager and have held that position since September 2005.  As such I have access to the personnel records of VMT.

2.  VMT is a privately held health care management and education corporation. Pursuant to contract, VMT manages the facility known as Washington Center for Aging Services.

3.  Records maintained by VMT in the normal course of business show that Kim Savoy worked for VMT from February 9, 2004 until December 21, 2004, when she was suspended, pending her agreement to comply with the dress code requirement of VMT, as modified to accommodate some but not all of her requests.  The suspension ended on February 8, 2005, when she was deemed to have resigned.

4.  The four documents attached as exhibits hereto are records maintained by VMT in the ordinary course of business.

5.  *Attachment 1 hereto* is a letter sent by VMT on December 21, 2004 to Ms. Savoy, notifying her of her suspension.

6.  By letter dated January 22, 2005 (*Attachment 2 hereto*), VMT advised Ms. Savoy that if she did not return to work, in appropriate attire, by February 4, 2005, she would be considered to have voluntarily resigned.

7.  By letter of February 8, 2005, *Attachment 3 hereto*, VMT advised Ms. Savoy that VMT accepted her voluntary resignation.

8.  *Attachment 4 hereto* is a letter dated November 18, 2004 from Ms. Savoy to a Human Resources official of VMT, complaining that a colleague had made comments to her which she considered inappropriate and offensive.

I declare under penalty of perjury that the foregoing is true and correct.

Winsome Davidson

Sworn to and subscribed before me this 27th day of April 2007.

SUSAN OPONGWADEE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires January 14, 2011

Notary Public



WASHINGTON CENTER FOR AGING SERVICES

December 21, 2004

Dear Ms. Savoy,

You were hired on February 9, 2004 as a Certified Nursing Assistant for the Washington Center for Aging Services. During your new hire orientation, the facility's Dress Code was discussed, and you were provided a memorandum dated August 30, 2002 referring to appropriate dress code attire. Please review memorandum stated "General Uniform Standards for Nurses" as follows:

1. **White pants, slacks or skirts pressed, clean and well fitting, with white or colored professional top; or**
2. **White uniform dress, pressed and clean.**
3. **White closed shoes and hose with any of the above.**
4. **Identification badge must be worn at all times while on duty.**
5. **Hats or head-coverings are prohibited, they may only be worn for health/medical or religious purposes (supporting documentation must be provided to Human Resources Director)**

Upon hire you did not wear a Hijaab. A short period after your hire date, it was noted you began to wear a white Hijaab in accordance with your religious commitment. In November, you began wearing a black Hijaab, which is not in compliance with our Dress Code policy. Upon my inquiry, as to the change of color you informed me that your martial status had changed which required you to wear black. I expressed to you that the black Hijaab was not in compliance with your required nursing attire and requested documentation from your religious leader. Additionally, you stated that you could not wear a white Hijaab because your dark hair would be visible.

On November 24, 2004, I received correspondence from Khalil Ibn Davis, Head of Masjid Affairs. He stated "the Hijaab must be thick, not thin and transparent". He also advised that the "Hijaab must not be a source of decoration in itself; such as being colorful and flashy".

Therefore, requesting you to wear a white Hijaab as previously worn is neither inappropriate or in violation of your religious commitments. You enter the facility each day in your black attire and change into a white uniform on your own accord without duress. This is in compliance with appropriate dress code attire. Your Hijaab now becomes a part of your uniform and therefore you must be compliant.

We discussed your changing colors from black to white two weeks ago. You explained due to financial reasons you would be unable to purchase a white Hijaab of a thicker fabric until December 17th which was your next pay day. It was agreed between us, and the expectation was that by Monday, December 20th you would be in all appropriate attire.

It has been brought to my attention by your immediate Supervisor, that as of December 21st you continue to be in violation of the previously discussed WCAS dress code policy.

Washington Center for Aging Services
2601 Eighteenth Street, N.E.
Washington, D.C. 20018
Phone: 202-541-6200

*Attachment 1*

Kim Savoy - Page 2

Employees who are found in violation of our policy "General Uniform Standards for Nurses" will be sent home. Continued violation will result in continued disciplinary action leading up to termination.

If you have any question regarding this matter, please feel free to contact me.

Sincerely,

DeLace W. Burch
Human Resources Director

WASHINGTON CENTER FOR AGING SERVICES

January 22, 2005

Ms. Kim Savoy
5208 4ᵗʰ Street NW
Washington, DC 20011

Dear Ms. Savoy:

This is to follow up on our previous correspondence and discussions concerning
your failure to comply with the Dress Code of the Washington Center for Aging
Services (WCAS), specifically the "General Uniform Standards for Nurses," which
you received during new hire orientation. As a result of your failure to comply,
you have been suspended without pay since December 22, 2004.

You were hired on February 9, 2004 as a Certified Nursing Assistant, at which
time the facility's dress code was discussed with you and you were provided with
an August 30, 2002 memorandum setting forth the "General Uniform Standards
for Nurses." Under this policy, although hats or head covering generally are
prohibited, there is an exception for health/medical or religious purposes,
provided there is supporting documentation.

Upon your hire, you did not wear a Hijaab, a head covering utilized by Muslim
women. However, a short period thereafter you began to wear a white Hijaab in
accordance with your religious commitment. As this was consistent with the
above dress code for nursing employees, this presented no problem, and we
accommodated you this aspect of your belief without even requiring supporting
documentation. It was observed and reported that you have taken time for
prayers during scheduled work time in the resident's living space.

In October 2004, however, you began to wear a black Hijaab, which is not in
compliance with the above dress code, although the rest of your clothing
remained white. Upon my inquiry, you informed me that your marital status had
changed, which required you to wear a black Hijaab. You did not explain why
you were otherwise able to arrive dressed in black and change into a white
uniform, other than your Hijaab. You did state that you could not wear a white
Hijaab because your dark hair would be visible (but later, as discussed below,
conceded that you could buy a thicker white Hijaab that would solve this
problem). I told you that this did not comply with the dress code for nursing
employees and requested documentation from your religious leader.

On November 24, 2004, I received correspondence from Khalil Ibn Davis, Head
of Masjid Affairs of the Masjid Ahlul Qur'aam wal Hadeeth. Most of this letter
consisted of an explanation of the conditions for proper wearing of a Hijaab, in
particular its coverage, fit, thickness, lack of decoration, and lack of perfume.

Washington Center for Aging Services
2601 Eighteenth Street, N.E.
Washington, D.C. 20018

Phone: 202-541-6200

*Attachment 2*

none of which are at issue in your situation. In passing he did state that the proper color is black, but did not state that this was a requirement.

Based on this, I concluded that the request that you continue to wear a white Hijaab was neither inappropriate nor a violation of your religious commitments. In a conversation in early December, we discussed your changing colors back to white. You explained that, for financial reasons, you would be unable to purchase a white Hijaab of thicker fabric until December 17, your next payday. We agreed that, by Monday, December 20, 2004, you again would be wearing all white.

Despite this agreement, you continued to wear a black Hijaab through December 21, 2004, and thus continued to be in violation of the dress code for nursing employees. By letter dated December 21, 2004, I recited the history to that date and warned you that employees found in violation of the dress code are sent home and subject to further disciplinary action up to termination for continued violation. On that day you also informed me that you were not married, but only engaged. Thus, your marital status had not changed.

Notwithstanding this warning, you defiantly continued to present yourself for work on December 22, 23, 24, 25, and 27 wearing a black Hijaab. On each occasion, you were sent home because you were not in compliance with the dress code. Finally, on December 28, 2004, when you again presented yourself wearing a black Hijaab, I asked you if you would comply. In the presence of Ms. Donna Williamson, Director of Nursing, you stated emphatically you would not. I then informed you that you were suspended until you decided to comply with the facility policy.

WCAS has reviewed this situation in detail and has concluded that it cannot comply with your insistence on wearing a black Hijaab, which we interpret as a request for accommodation of your religious beliefs and/or practices beyond those accommodations already granted.

As an initial matter, we have serious reservations concerning the legitimacy of your justification for now insisting on a black Hijaab. Although you initially told us this was because of a change in your marital status, you later informed us that there had been no such change. You also initially agreed to return to wearing a white Hijaab, once you had the money to buy one of fabric thick enough to hide the color of your hair, then reneged on this agreement. Although the letter from Khalil Ibn Davis stated that the proper color is black, he did not state that white was impermissible, and indeed white would appear consistent with the guidelines and conditions that he stated for the proper wearing of a Hijaab. Furthermore, our own investigation has not identified any requirement that Muslim women wear a black Hijaab; indeed women on the Hajj wear white Hijaabs, and a publication

Page 3 – K Savoy

copyrighted by the Council on American Islamic Relations specifically states that an employer can ask that the Hijaab be in a color that does not clash with a company uniform. Finally, we have difficulty understanding your willingness to wear white for the rest of your uniform, but not for your Hijaab.

However, even if we accept your justification as legitimate, we cannot accommodate your request to remain in a nursing position while wearing a black Hijaab. WCAS's dress code for nursing employees is an important part of the positive professional and personal images that it seeks to present to its residents and the public. The clothing requirement is an integral part of the dress code and plays a vital role in projecting not only a professional appearance but also one of cleanliness and overall quality of care, important for a facility such as WCAS. Furthermore, this requirement enables our residents, many of who may be suffering from various stages of dementia or confusion, to recognize immediately when someone is not a nursing employee. The same is true for visitors, who may on occasion seek out nursing staff, for consultation or emergencies. Thus, the requirement is important to the comfort of the residents, as well as a significant safety and security consideration. Under these circumstances, your requested accommodation would be an undue hardship.

Notwithstanding, the above and your past insubordinate refusal to follow the dress code for nursing employees, we remain willing to continue your employment, if you agree to resume wearing a white Hijaab. In the alternative, you may continue wearing a black skullcap, so long as you wear a while covering over it. Please inform me no later than February 4, 2005, if you are willing to accept either of these alternatives. Failure to comply by the abovementioned date will be considered a voluntary resignation.

If you have any further questions regarding this matter, please feel free to contact at 202-541-6136.

Sincerely,

DeLace W. Burch
Director of Human Resources

WASHINGTON CENTER FOR AGING SERVICES

February 8, 2005

Ms. Kim Savoy
5208 4th Street
Washington, DC 20011

Dear Ms. Savoy,

Your decision not to contact my office on or before February 4, 2005, in accordance with the letter dated January 22, 2005, is considered acceptance of your voluntary resignation from employment, with the Washington Center for Aging Services.

Your final payroll check will be issued for the pay period ending February 5, 2005 on February 11th, inclusive of all accrued vacation leave. Any insurance benefit coverage will discontinue' effective February 28th. The COBRA health insurance option will be forwarded to your address within 14 days.

We wish you success in your future endeavors. If you have any questions, please contact me at (202) 541-6136.

Sincerely,

DeLace W. Burch
Director of Human Resources

Washington Center for Aging Services
2601 Eighteenth Street, N.E.
Washington, D.C. 20018
Phone: 202-541-6200

*Attachment 3*

Nov 18. 04

Mrs Birch

On November 18 04 about 3:15pm. I the building at 2601 18th NE Wash DC 2008 My place of employment. As I walked pass the security desk to clock in for the evening I passed another employee Ms. Emma Harrell. Before I could get to the time clock she made a very insulting statement to the officers at the security desk and a numerous of other employees. She stated "Who the hell is that walking in here looking like a mass murderer". Which got a laugh out of a few. I was dressed in my Islamic garments. Hijab, a long over garment and Kimar, head garment and wear a facial veil. I'm a Muslim, and

FYI

Very proud to be I walked back to let her know that she was very offensive. I then caught the elevator downstairs to speak with the D.O.N. Mrs Taylor. Reprositing the elevator. Ms Harrell and Mrs Taylor were already together. Mrs Taylor asked us to step into her office. Mrs Taylor ask what was the problem. Ms Harrell stated, I don't appreciate the way she came dressed here. Mrs Taylor replied by saying we've already discussed the issue with Ms Davis. that she would need to change the color of her head peice. Ms Harrell started to apologize about being offensive. And I said I was very offended. Mrs Taylor ask me not to interrupt the apology but I felt she was out of place and need to be written up As I exited the office. She continued with the insult in my opion by stateing, You are

truly bold walking around in the get up. in these days and time — I replied, I'm Muslim and I have God, I would like her written up. What of it would have been one of our patients relatives. I'm sure the D.O.N. would have written her up. And I feel I deserve the same respect. Thank You for your prompt Actions in this matter

Sincerly

[signature]

EXHIBIT D

## 2006 CA 005354 B SAVOY, KIM R Vs. WASHINGTON CENTER FOR AGING SERVICES

| File Date | 07/13/2006 | Case Status | Closed | Case Status Date | 07/13/2006 |
|---|---|---|---|---|---|
| | | Case Disposition | Dismissed by Court | Case Disposition Date | 06/08/2007 |

### Party Information

| Party Name | Party Alias(es) | Party Type | Attorney(s) | Attorney Phone |
|---|---|---|---|---|
| SAVOY, KIM R | | PLAINTIFF | PRO SE | |
| WASHINGTON CENTER FOR AGING SERVICES | | Defendant | WILLIAMS, Ms KATHLEEN M | (202)861-0900 |
| HARRELL, EMMA | | Defendant | | |
| VMT LONG TERM CARE MANAGMENT, INC | WASHINGTON CENTER FOR AGING SERVICES | Defendant | WILLIAMS, Ms KATHLEEN M | (202)861-0900 |

### Financial Entries

| Receipt # | Date | Received From | Amount Paid |
|---|---|---|---|
| 71418 | 05/02/2007 | Williams, Kathleen | 20.00 |

| Payment | | Fee | |
|---|---|---|---|
| Receipt Depositor | 20.00 | Cost | 20.00 |

| Receipt # | Date | Received From | Amount Paid |
|---|---|---|---|
| 59238 | 12/12/2006 | Washington | 20.00 |

| Payment | | Fee | |
|---|---|---|---|
| Check | 20.00 | Cost | 20.00 |

| Receipt # | Date | Received From | Amount Paid |
|---|---|---|---|
| 46477 | 08/07/2006 | KATHLEEN WILLIAMS | 20.00 |

| Payment | | Fee | |
|---|---|---|---|
| Check | 20.00 | Cost | 20.00 |

### Docket Entries

| Date | Text |
|---|---|
| 06/11/2007 | Dismissed by Court |
| 06/08/2007 | Oral Ruling on Written Motion Entered on the Docket granting motion of deft. Washington Center for the Aging Services entered on the docket 6-8-07. Oral ruling issued on the record in open Court by Judge Bartnoff on 6-8-07. BA KIM RASHEDA SAVOY (PLAINTIFF); ; Ms KATHLEEN M WILLIAMS (Attorney) on behalf of WASHINGTON CENTER FOR AGING SERVICES (Defendant); Judge JUDITH BARTNOFF |
| 06/08/2007 | Event Resulted: The following event: Scheduling Conference Hearing scheduled for 06/08/2007 at 9:30 am has been resulted as follows: Result: Scheduling Conference Hearing Not Held. Motion of deft. Washington Center for Aging Services to dismiss is |

granted. BA Judge: BARTNOFF, JUDITH Location: Courtroom 415 KIM RASHEDA SAVOY (PLAINTIFF); ; Ms KATHLEEN M WILLIAMS (Attorney) on behalf of WASHINGTON CENTER FOR AGING SERVICES (Defendant); Judge JUDITH BARTNOFF

05/18/2007 Opposition to Motion to Dismiss Amended Complaint Filed Attorney: PRO SE (999999) KIM RASHEDA SAVOY (PLAINTIFF);

04/27/2007 Additional eFiling Document to Motion to Dismiss Amended Complaint Filed. submitted 04/27/2007 15:58. ksc Attorney: WILLIAMS, Ms KATHLEEN M (334888) WASHINGTON CENTER FOR AGING SERVICES (Defendant);

04/27/2007 Motion to Dismiss Amended Complaint Filed. submitted 04/27/2007 15:58. ksc Attorney: WILLIAMS, Ms KATHLEEN M (334888) VMT LONG TERM CARE MANAGMENT, INC (Defendant); Receipt: 71418 Date: 05/02/2007

03/30/2007 Event Scheduled Event: Scheduling Conference Hearing Date: 06/08/2007 Time: 9:30 am Judge: BARTNOFF, JUDITH Location: Courtroom 415 Result: Scheduling Conference Hearing Not Held

03/30/2007 Notice of Hearing Mailed Next Business Day Notice Of Hearing Sent on: 03/30/2007 10:57:37

03/30/2007 Event Resulted: The following event: Scheduling Conference Hearing scheduled for 03/30/2007 at 9:30 am has been resulted as follows: Result: Scheduling Conference Hearing Not Held. No service as to deft. Harrell. Case dismissed as to deft. Emma Harrell. Counsel for deft. Washington Center for Aging Services accepts service. Answer to be filed by 4-27-07. Deft. Wash. Center to file motion to dismiss. Pltf. to file opposition by 5-18-07. Sched. conf. C-6-8-07 at 9:30 a.m. BA Judge: BARTNOFF, JUDITH Location: Courtroom 415 KIM RASHEDA SAVOY (PLAINTIFF); WASHINGTON CENTER FOR AGING SERVICES (Defendant); ; Judge JUDITH BARTNOFF

02/15/2007 Affidavit of Service of Summons & Complaint on Department of Regulatory Affairs (Defendant); on 02/15/07

12/26/2006 Event Scheduled Event: Scheduling Conference Hearing Date: 03/30/2007 Time: 9:30 am Judge: BARTNOFF, JUDITH Location: Courtroom 415 Result: Scheduling Conference Hearing Not Held

12/26/2006 Judge Caseload Transfer The judge was changed from KRAVITZ, NEAL E to BARTNOFF, JUDITH .

12/26/2006 Judge Caseload Transfer The judge was changed from BARTNOFF, JUDITH to KRAVITZ, NEAL .

12/26/2006 Judge Caseload Transfer The judge was changed from KRAVITZ, NEAL E to BARTNOFF, JUDITH .

12/18/2006 Amended Complaint Filed PRO SE (Attorney) on behalf of KIM RASHEDA SAVOY (PLAINTIFF)

12/18/2006 Event Scheduled Event: Scheduling Conference Hearing Date: 03/30/2007 Time: 9:30 am Judge: KRAVITZ, NEAL E Location: Courtroom 415

12/18/2006 Notice of Hearing Mailed Next Business Day Notice Of Hearing Sent on: 12/18/2006 15:32:40

12/15/2006 Event Resulted: The following event: Scheduling Conference Hearing scheduled for 12/15/2006 at 9:30 am has been resulted as follows: Result: Scheduling Conference Hearing Not Held (COURTROOM 415- CourtSmart) Pro se plaintiff present. Atty Williams for defendant present. Scheduling Conference Hearing not held. Pltf given until December 18, 2006 to file an Amended Complaint. Deft's Renewed Motion to Dismiss is Denied Without Prejudice. Pltf. given until February 16, 2007 to file an affidavit of service. Scheduling Conference Hearing rescheduled for March 30, 2007 9:30 a. m. JUDGE KRAVITZ / mr Judge: KRAVITZ, NEAL E Location: Courtroom 415 KIM RASHEDA SAVOY (PLAINTIFF); ; Ms KATHLEEN M WILLIAMS (Attorney) on behalf of WASHINGTON CENTER FOR AGING SERVICES (Defendant)

12/15/2006 Order Denying Without Prejudice Defendants' Renewed Motion to Dismiss for Failure to Serve Signed by J.Kravitz and Entered on the Docket 12/15/06. Copies Mailed from Chambers 12/18/06.nw

12/12/2006 Renewed Motion to Dismiss for Failure to Serve Filed Attorney: WILLIAMS, Ms KATHLEEN M (334888) Ms KATHLEEN M WILLIAMS (Attorney) on behalf of WASHINGTON CENTER FOR AGING SERVICES (Defendant) Receipt: 59238 Date: 12/12/2006

12/12/2006 Returned Scheduling Conference Hearing notice issued on November 27, 2006 Mailed to

Kim Rasheda Savoy Returned to Court on December 7, 2006 Reason: Insufficient address

10/27/2006 Event Scheduled Event: Scheduling Conference Hearing Date: 12/15/2006 Time: 9:30 am Judge: KRAVITZ, NEAL E Location: Courtroom 415 Result: Scheduling Conference Hearing Not Held

10/27/2006 Notice of Hearing Mailed Next Business Day Notice Of Hearing Sent on: 10/27/2006 16:07:21

10/27/2006 Event Resulted: The following event: Initial Scheduling Conference-60 scheduled for 10/27/2006 at 9:30 am has been resulted as follows: Result: Scheduling Conference Hearing Not Held (COURTROOM 415 - CourtSmart) Pro Se Pltf present. Atty Williams present for the defendants. Scheduling Conference Hearing not held. Deft given leave to file the appropriate motion. Scheduling Conference Hearing reset for December 15, 2006 at 9:30 am. JUDGE KRAVITZ / mr Judge: KRAVITZ, NEAL E Location: Courtroom 415 KIM RASHEDA SAVOY (PLAINTIFF); ; Ms KATHLEEN M WILLIAMS (Attorney) on behalf of WASHINGTON CENTER FOR AGING SERVICES (Defendant); Judge NEAL E KRAVITZ

09/14/2006 Order Denying Without Prejudice Motion to Dismiss for Failure to Serve or in the Alternative for More Definite Statement entered on: 08/31/06 Mailed to: Kim Rasheda Savoy Returned to Court on: 09/14/06 Reason: No Such Number

09/11/2006 Proof of Service Method : Service Issued Issued : 07/14/2006 Service : Summons Issued Served : 07/17/2006 Return : 09/11/2006 On : HARRELL, EMMA Signed By : Reason : Proof of Service Comment : Tracking #: 5000019914

09/11/2006 Affidavit of Service of Summons & Complaint on EMMA HARRELL (Defendant);

09/11/2006 Proof of Service Method : Service Issued Issued : 07/14/2006 Service : Summons Issued Served : 07/30/2006 Return : 09/11/2006 On : WASHINGTON CENTER FOR AGING SERVICES Signed By : Reason : Proof of Service Comment : Tracking #: 5000019913

09/11/2006 Affidavit of Service of Summons & Complaint on WASHINGTON CENTER FOR AGING SERVICES (Defendant);

08/31/2006 Order Denying Without Prejudice Defendant Washington Center fore Aging Services Motion to Dismiss For Failure to Serve Signed by J.Kravitz, Entered on the Docket, and Copies Mailed from Chambers 8/31/06.nw

08/07/2006 Motion to Dismiss For Failure to Serve or in the Alternative for More Definite Statement Attorney: WILLIAMS, Ms KATHLEEN M (334888) Receipt: 46477 Date: 08/07/2006

07/14/2006 Issue Date: 07/14/2006 Service: Summons Issued Method: Service Issued Cost Per: $ WASHINGTON CENTER FOR AGING SERVICES 2601 18TH STREET NE WASHINGTON, DC 20018 Tracking No: 5000019913 HARRELL, EMMA 2601 18TH NE WASHINGTON, DC 20018 Tracking No: 5000019914

07/13/2006 Order Granting Motion to Proceed In Forma Pauperis Signed and Entered on the Docket by Judge Hamilton

07/13/2006 Motion to Proceed In Forma Pauperis Filed Attorney: PRO SE (999999) KIM RASHEDA SAVOY (PLAINTIFF);

07/13/2006 Event Scheduled Event: Initial Scheduling Conference-60 Date: 10/27/2006 Time: 9:30 am Judge: KRAVITZ, NEAL E. Location: Courtroom 415 Result: Scheduling Conference Hearing Not Held

07/13/2006 Complaint for Harassment Filed

EXHIBIT E

EEOC Form 5/01

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 100-2005-01878 |

D.C. Office Of Human Rights _____ and EEOC
*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| Kim R. Savoy | (202) 291-5727 | 03-14-1965 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1340 Nicholson St., N.W. | Washington, DC 20011 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| WASHINGTON CENTER FOR AGING SERVICES | 201 - 500 | (202) 541-6136 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2601 18th St., N.E. | Washington, DC 20002 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 11-01-2004 | 02-03-2005 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began working as a licensed practical nurse at the Washington Center for Aging Services in February 2004. At that time, I wore a dark head scarf for religious reasons. In August 2004, I began to wear a face covering to work. I removed the face covering and wore only the head scarf when I was working on a floor with patients.

Beginning in November or December 2004, co-workers and supervisors made harassing comments about my religion and my use of a head scarf. The Director of Nursing said that I looked like a "terrorist" and a "mass murderer."

I wear a dark head scarf because a lighter color would show my hair. Although I submitted documentation verifying my need to wear a head scarf for religious reasons, WCAS refused to allow me to wear a dark head scarf. Instead, in December 2004, WCAS suspended me without pay. In February 2005, WCAS fired me.

I believe that I have been discriminated against because of my religion (Muslim) in violation of Title VII of the Civil Rights Act of 1964, as amended.

| | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| Aug 15, 2005 _____ *Date*    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |