UNITED STATES DISTRICT COURT
FOR THE DISTRISCT OF COLUMBIA

Kim Rasheeda Savoy,
　　　　　　　Plaintiff,
V.

VMT LONG TERM Care Management Co., INC, et al.,
　　　　　　　Defendants.

Civil Action No. 07-1738 (ESH)

Plaintiffs in opposition to defendants motion to dismiss,

1.) ~~Plaintiff~~ Defendants motion should not be grant for the following reasons.
(Please see Attached copies)

**RECEIVED**
NOV 1 6 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Kim R. Savoy
1816 Irving St. NE #204
Washington DC, 20018
(202)-744-7071

November 16, 2007

I Kim Rasheda Savoy have mailed a copy of this motion to: Clifford E. Barnes at 1227 25th St NW Suite 700 Washington DC 20037

Kim Rasheda Savoy
1816 Irving St NE #204
Washington DC. 20018
744-7071 · 202-526-0216

November 16, 2007

November 16, 2007

This is a letter of verification that I, Terry L. Brown did serve Emma Harrell at her place of employment VMT Long Term Care Management Co., aka and dba Washington Center for Aging Services, at 2601 18th St NE Washington DC 20018, Civil action case no:1:07-cv-1738. The time of service was Friday November 16, 2007 at 12:26 pm.

Signature _Terry L Brown_

Date 11/16/07
Time 2:46 pm



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

KIM RASHEEDA SAVOY,

    Plaintiff                                    CIVIL ACTION
                                                        Docket No.

v.

VMT LONG TERM CARE MANAGEMENT,
CO., INC. aka and dba WASHINGTON CENTER FOR
AGING SERVICES, EMMA HARRELL,

    Defendants.

                                                        **COMPLAINT AND JURY DEMAND**

---

## JURISDICTION

1. Jurisdiction of this court is founded on **42 U.S.C. 2000e-1** protecting Plaintiffs right to be free from discrimination base on religion.

2. **42 U.S.C. 2000e-2** protecting the Plaintiffs right to be free from discriminatory employment practices.

3. 42 U.S.C. 2000e-2A et al. protecting the Plaintiff's right to be free from discriminatory employment practices based on religion.

4. Plaintiff evokes the pendant and/or ancillary jurisdiction of the District of Columbia and incorporates **D.C. Code 1-2511** guaranteeing equal opportunities in employment and **D.C. Code 1-2512** protecting the Plaintiff's right against unlawful discriminatory practices in employment based on religion.

## PARTIES

1. PRO SE PLAINTIFF, KIM RASHEEDA SAVOY, presently resides at 1816 Irving Street, N.E., Washington, District of Columbia.

2. Defendant, VMT LONG TERM CARE MANAGEMENT, INC, aka and dba Washington Center for Aging Services (herein after referred to as WCAS is located at 2601 18th Street, N.E., Washington, District of Columbia, 20018

3. Defendant, EMMA HARRELL, is and/or was an employee of defendant WCAS at all times relevant to this action as was acting within the scope of her employment therein at all times thereto.

## INTRODUCTORY STATEMENT

1. This is a civil action to vindicate my federal and state rights. I was hired by defendant WCA then doing business as VMT Long Term Care Management, Inc. My employment was terminated by WCA in February 2005, based on my religious practices. Throughout these months of employment I ws singled out and arbitrarily picked on constantly, all related to my religion which is Al Islam. When I was hired for this job it was known to everyone involved that I was Muslim. I dressed in the traditional Islamic way with the appropriate head covering. When I began orientation I was able to stop for breaks as company policy and pray at designated prayer times. I was granted this accommodation consistent with my religious right by Ms. Melva Taylor, an employee and supervisor of WCA. Eventually I was assigned a floor where my tour of duty would begin. The floor was call 1 (one) Blue, the charge nurse was Tina and the RCC was Gwen. In the beginning I wore a dark pink head scarf, again consistent with my religious practices. One month late I began to wear the more traditional black head covering. From that point on Tina never seemed to be satisfied with any of the work I performed. She began to complain about my patient treatment although it was clear that the patients were being well cared for. When I would promptly put my residences to bed before 8 p.m., she questioned why they would be in bed so early. After a meeting she had with RCC Gwen and Human resources, the hour was changed to 9:00 p.m. Although I was still timely in bedding and caring for my residents I was still harassed. I on one occasion reported Tina to Ms. Taylor for allowing a CNA Matthew, to give insulin shoots to a resident and he was unlicensed to do so. No action was taken in this matter by WCAS.

2. In or around June, 2005 I began to wear *niqab* and *jilbab* traditional Islamic dress, to work with my uniform underneath. Although I arrived 20 to 30 minutes early normally did not dress out of uniform while dealing with patients the harassment began to escalate. I began to receive criticism for praying during my breaks, which included two company allowed 15 minute breaks and one 30 minute break. I was told by Ms. DeLace Burch, and employee of defendant WCAS that I would have to remove my head covering or get a letter from my religious leader.

Although personally insulted by this order/request I accommodated them with the letter from my Imam which unfortunately did not please them. I was then told that "black" head dress was not a color I could wear, by Ms. Burch, of Human Resources. She said to remove it because it confused the Alzheimer residence on the floor. This order was made even though Nun's and people of other churches would come to read the Bible to residence and none of them were addressed as to their head covering. I was then reported by Tina for reading the Holy Qu'ran and thereafter ordered by Ms. Taylor to stop reading "that stuff" meaning the Holy Qu/ran in Arabic. I was accused thereafter of reading the Qu'ran while working by an employee of WCA$ and was accused of clocking out before it was time to leave by Tina. I was fired/suspended/terminated for this until I met with Ms. Burch and asked her to pull my time card. Upon pulling the card she found that the allegation against me for clocking out early were false in fact and I was reinstated with back pay.

3. I was subsequently fired/suspended/terminated and additional time for 7-8 days. This resulted from one evening when I had to leave work 30 minutes in order to pick up my daughter. I had communicated this earlier to Tina and the night supervisor Sheila Nathan neither of whom voiced an objection at the time. However, knowing the climate and believing they were doing everything that they could to get rid of me I had a co-worker check my patients prior to my leaving to be sure I would not be accused of abuse or neglect. I in fact was accused of neglect which led to the suspension. I was informed that my patients were wet and not taken care of properly. However, upon producing my witness who confirmed the good quality of my patients I was again reinstated. I was again suspended for a third time when I was in a fire that required my being treated by paramedics. These paramedics called my job one hour before my due time to inform them that I would not be in because of the fire. I was fired and then again reinstated when I produced a letter from the Red Cross who were at the scene of the horrible fire. To make matters worst I paid $380.00 every two week for my company sponsored health insurance. This money is deducted every two weeks from my pay to cover the insurance. Upon attempting to arrange a physical examination for my daughter I was informed that my insurance was dropped. However, the deductions were still coming out of my check. I brought this to the attention of management and nothing, till this date has been done to rectify this situation. I have not received any reimbursement toward the money taken on the cancelled insurance nor did I have the benefit of the insurance. Following an incident whereby I was injured on the job WCA$ withheld information from me that would allow me to be paid for my injuries.

4. I was constantly criticized and told I could not wear and black head covering by Ms. Burch, Tina, Ms. Taylor and Ms. Nathan all employees of WCA$ although there was no policy or procedure cited to me that held against it. I continued to come into work dressed as described. On one day I arrived prepared to work and approached the clock where other employees had gathered to clock either in or out. As I passed Ms. Emma Harrell she said aloud "she's a mass murderer and a

terrorist. Causing everyone to burst into laughter. I kindly walked over to her admonishing her and thereafter reported her to Ms. Taylor of Human Resources. When I arrived at Ms. Taylor's office Ms. Harrell was already there. Upon seeing me she began to laugh again. I explained in detail what had happened to and she assured me should would take care of it. Before I left out of Ms. Taylor's office Ms. Harrell looked at me and said, that I had the nerve to walk around "like that" (meaning in Islamic attire) in this day and time. I then reported here to Ms. Burch of Human Resources and was told that Ms. Harrell would receive sympathy or sensitivity training. I reported the matter to the Council on American and Islamic Relations (CAIR) who wrote to the company on my behalf explaining the action of the employees and explaining that the company is responsible to keep this type of behavior under control. Additionally they requested information as to when the sympathy training would begin. Thereafter, for a period of about two week Ms. Taylor would approach me and say, "Are you going to remove your scarf or change the color?" and would say you came here just to be sent home. I would respond by saying that I was here in what is required in the handbook, white pants, shoes and socks, and any color top I desired, and my documentation for a religious head covering is already on file. I was pressed to remove the head covering for over 2 weeks. I would clock in, move to my floor to begin work only to have an employee call Ms. Taylor who would order me to remove the head covering or leave the building. I would thereafter leave. In December of 2005, I was asked to leave without pay until further notice. In February 2006 I was given my final check and fired for religious reason. The defendant, WCAS is responsible for the conduct of its employee and are accountable for their discriminatory practices and actions.

## COMPLAINT

**AS AND FOR** a Complaint in the United States District Court, for the District of Columbia, the Plaintiff, Kim Rasheeda Savoy, alleges as follows:

## COUNT 1

1. Plaintiff repeats and incorporates all of the Introductory Statement as if fully set forth herein and further asserts, Plaintiff was an employee of defendant WCAS who is subject to the federal and state laws against discrimination based on religion.

2. That between February 2005 and February 2006 defendant WCAS through the actions and inactions of its employees did discriminate against the Plaintiff base on the fact that she is a Muslim.

3. That said discriminatory practices violated the Plaintiff State and Federal civil and Constitution rights against religious discrimination in employment..

WHEREFORE, Plaintiff seeks judgment for discrimination in the amount of $500,000., plus court cost.

## COUNT 2

1. Plaintiff repeats and realleges each allegations above as if fully set forth herein.

2. Plaintiff was an employee of defendant WCAS who was doing business in the District of Columbia.

3. Defendant WCAS acting through its employees created a hostile work environment for Plaintiff by attacking her religious practice and/or dress in violation of the Plaintiff's Civil and Constitutional rights

Wherefore, Plaintiff demands judgment in the amount of one million dollars from the defendants, plus punitive damages and costs of this suit.

## COUNT 3

1. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

2. Defendant WCAS is the employer of Tina, Ms. Burch, Ms. Harrell, Ms. Taylor, and Ms. Nathan, et.als., who repeatedly discriminated against Plaintiff based on her religious practice.

3. Defendant WCAS took did not take the necessary steps to correct the actions of the employees nor to protect the rights of the Plaintiff from attacks and slanders and persecution which occurred daily because of her religious practice.

4. Defendant WCAS is vicariously responsible for the discriminatory, malicious and/or slanderous conduct of their employees.

Wherefore, Plaintiff demands judgment in the amount of one million dollars from the defendants, plus punitive damages along with the costs of this suit, as well as any other remedy the court deems just.

## COUNT 4

1. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

2. Defendant WCAS owed a duty to the Plaintiff to secure a positive work environment free from hostility, discrimination and/or ridicule.

3. Defendant WCA breached it duty to the Plaintiff by failing to properly train, supervise or correct the actions of its employees.

4. As a direct and proximate result of the negligence of defendant WCA properly and/or adequately train, supervise and/or correct the actions of the employees Plaintiff was discriminated against because of her religious practices and suffered through a hostile work environment and was terminated from her employment.

Wherefore, Plaintiff demands judgment against the defendants in the amount of One Million Dollars, plus punitive damages, and costs of this suit.

## COUNT 5

1. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

2. Defendant Emma Harrell at all times relevant hereto was an employee of the defendant WCA.

3. Defendant slandered the character and reputation of the Plaintiff by calling her a Terrorist and a mass murderer in front of other workers and patients.

4. As a result of this slander Plaintiff has been embarrassed and her reputation in the community damaged irreparably.

Wherefore, Plaintiff demands judgment against defendant Emma Harrell individually for $100,000 and punitive damages plus cost of this suit.

## JURY DEMAND

Plaintiff demands a jury trial on all issues pursuant to the Rules of the Court.

August 31, 2007

_____,
KIM R. SAVOY
1816 Irving Street NE #204
Washington, D.C. 20018
(202) 244-7871

EEOC Form 161-B (3/98)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Kim R. Savoy
1340 Nichols St., N.W.
Washington, DC 20011

From: Tampa Field Office
501 East Polk Street
Room 1000
Tampa, FL 33602

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 100-2005-01878 | Jearlean Johnson, Investigator | (813) 202-7913 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosure(s)  Manuel Zurita, Director  6/15/07 (Date Mailed)

cc: Delace Burch
Human Resources Director
WASHINGTON CENTER FOR AGING SERVICES
2601 18th Street, N.E.
Washington, DC 20018